THE HONORABLE ROBERT S. LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR21-075-RSL |
| Plaintiff, | ) ) ) | |
| v. | ) ) | RESPONSE TO GOVERNMENT'S MOTION FOR RECONSIDERATION |
| JOHN HOLCOMB, | ) ) ) | |
| Defendant. | ) ) ) | |

## TABLE OF CONTENTS

I.   RECONSIDERATION IS AN EXTRAORDINARY REMEDY, NOT AVAILABLE FOR ARGUMENTS THAT COULD HAVE BEEN PREVIOULSY RAISED, SUCH AS THE GOVERNMENT'S ARGUMENTS HERE, AND REQUIRES A SHOWING OF MANIFEST ERROR ................... 1

A. The government misstates the test for motions for reconsideration ................ 1

B. Reconsideration is to be used "sparingly," and not for arguments a party chose not to present originally .......................................................... 3

II.  THIS COURT APPLIED THE CORRECT LEGAL STANDARD IN DETERMINING THAT THE *LEON* GOOD FAITH EXCEPTION WAS UNAVAILABLE; AT A MINIMUM, THE COURT DID NOT COMMIT MANIFEST ERROR .......................................................................... 4

A. The government grossly mischaracterizes this Court's ruling ........................ 4

B. This Court applied the correct legal standard; at a minimum, there was no manifest error .................................................................................. 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

C. Suppression is required because the *Leon* good faith exception is unavailable; at a minimum, the Court's conclusion in that regard was not manifest error ......................................................................................... 8

III.   THE *LEON* GOOD FAITH EXCEPTION MAY APPLY WHERE THE CASE LAW DOES NOT CLEARLY ESTABLISH THAT THE WARRANT VIOLATED THE FOURTH AMENDMENT ..................................................... 11

A. How *Leon* applies in a criminal case differs from how it applies in a civil rights action ................................................................................. 11

B. Assuming without conceding the premise of the Court's question, the Court may grant a *Leon* good faith exception in certain circumstances where the law is not clearly established................................................................. 13

C. Even if the "clearly establishes" test were applicable, that standard is not the insurmountable standard that the government implies.................................. 17

  1. Under the "clearly establishes" test, the officers were clearly on notice that the "dominion and control" provision did not authorize the search of the computer in its entirety ............................................................... 17

  2. To the extent the Court intends to apply the "clearly establishes" test, Mr. Holcomb requests an evidentiary hearing to demonstrate that the computer search in this case clearly violated the Fourth Amendment, the search was conducted in bad faith, and that Mr. Holcomb suffered prejudice as a result of the search............................................................................. 23

IV.   CONCLUSION ................................................................... 25

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - ii

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

# TABLE OF AUTHORITIES

**Supreme Court Opinions**

*Coolidge v. New Hampshire*, 403 U.S. 443 (1971) ................................................ 18

*Davis v. United States*, 564 U.S. 229 (2011) ........................................ 7, 9, 10

*Groh v. Ramirez*, 540 U.S. 551 (2004) ................................................ 18

*Herring v. United States*, 555 U.S. 135 (2009) .............................. 14, 18, 22

*Hudson v. Michigan*, 547 U.S. 586 (2006) ........................................ 9

*Illinois v. Gates*, 462 U.S. 213, (1983) ........................................ 18

*Malley v. Briggs*, 475 U.S. 335 (1986) .................................... 12, 13

*Marron v. United States*, 275 U.S. 192 (1927) .................................... 18

*Tolan v. Cotton*, 572 U.S. 650 (2014) .......................................... 4

*United States v. Ventresca*, 380 U.S. 102 (1965) ........................................ 18

**Federal Court Opinions**

*Barton v. LeadPoint Inc.*, No. C21-5372 BHS, 2022 WL 293135 (W.D. Wash. Feb. 1, 2022) ................................................................................ 2

*Bonivert v. City of Clarkston*, 883 F.3d 865 (9th Cir. 2018) ........................................ 17

*Cypress Ins. Co. v. SK Hynix Am. Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 1261950 (W.D. Wash. Mar. 19, 2019) ........................................ 2

*Dollard v. Whisenand*, 946 F.3d 342 (7th Cir. 2019) .................................... 15

*Graham v. Gagnon*, 831 F.3d 176 (4th Cir. 2016) ........................................ 16

*Hardwick v. Cnty. of Orange*, 844 F.3d 1112 (9th Cir. 2017) .................................... 14

*Immelt v. Sharp*, No. C20-5617 BHS, 2022 WL 594533 (W.D. Wash. Feb. 28, 2022).. 3

*Ioane v. Hodges*, 939 F.3d 945 (9th Cir. 2018) ................................ 14, 15, 16

*Kreidler v. Pixler*, No. C06-0697RSL, 2009 WL 10676498 (W.D. Wash. July 17, 2009) ................................................................................ 3

*Mills v. City of Barbourville*, 389 F.3d 568, (6th Cir. 2004) ........................................ 16

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - iii

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

*Money Mailer, LLC v. Brewer*, No. C15-1215RSL, 2016 WL 11479219 (W.D. Wash. Nov. 15, 2016) ................................................................................................ 3

*Papadopoulos v. Fred Meyer Stores, Inc.*, No. C04-0102RSL, 2006 WL 1548825 (W.D. Wash. June 2, 2006) ............................................................... 3, 8, 11

*Sandoval v. Cnty. of San Diego*, 985 F.3d 657 (9th Cir.) ............................................. 16

*Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992) ........................................ 14

*Sims v. Labowitz*, 885 F.3d 254 (4th Cir. 2018) .......................................................... 15

*United States v. Artis*, 919 F.3d 1123 (9th Cir. 2019) ................................................... 4

*United States v. Caesar*, 2 F.4th 160 (3d Cir. 2021) ................................................. 9, 10

*United States v. Campbell*, 26 F.4th 860 (11th Cir. 2022) ............................................. 4

*United States v. Campbell*, 2016 WL 4010132 (11th Cir. July 22, 2016) ..................... 4

*United States v. Cardwell*, 680 F.2d 75 (9th Cir. 1982) ............................................... 18

*United States v. Dozier*, 844 F.2d 701 (9th Cir. 1988) ........................................... 13, 19

*United States v. Elmore*, 917 F.3d 1068 (9th Cir. 2019) ................................................ 4

*United States v. Gomez-Soto*, 723 F.2d 649 (9th Cir. 1984) ................................... 18, 22

*United States v. Hay*, 231 F.3d 630–37 (9th Cir. 2000) ............................................... 20

*United States v. Hill*, 459 F.3d 966 (9th Cir. 2006) ............................................... 20, 21

*United States v. Kow*, 58 F.3d (9th Cir. 1995) .................................... 13, 19, 21, 22

*United States v. Lacy*, 119 F.3d 742 (9th Cir. 1997) ................................................... 21

*United States v. Ramirez*, 976 F.3d 946 (9th Cir. 2020) ............................................. 22

*United States v. SDI Future Health, Inc.*, 568 F.3d 684 (9th Cir. 2009) ....................... 3

*United States. v. Atencio*, No. 1:21-CR-0058-DCN, 2022 WL 1288734 (D. Idaho Apr. 29, 2022) ................................................................................................... 6, 13

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - iv

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

*United v. Spilotro*, 800 F.2d 959 (9th Cir. 1986) ............................................. 13, 18, 20

*United v. Stubbs*, 873 F.2d 210 (9th Cir. 1989) ............................................. 13, 19, 20

**United States Code**

18 U.S.C. § 3731 .......................................................................................... 2

## I.   RECONSIDERATION IS AN EXTRAORDINARY REMEDY, NOT AVAILABLE FOR ARGUMENTS THAT COULD HAVE BEEN PREVIOUSLY RAISED, SUCH AS THE GOVERNMENT'S ARGUMENTS HERE, AND REQUIRES A SHOWING OF MANIFEST ERROR.

This Court previously concluded that the search of Mr. Holcomb's computer was impermissible because the warrant, which the federal government (not the officers who conducted the search) interpreted to allow a search of the entirety of the computer to establish dominion, ownership, or control, was unduly broad. The Court further concluded that the search was not done in good faith because the clause was so facially deficient that no executing officer could reasonably presume it to allow the search of a computer in its entirety. This Court's reasoning was sound and the government's reconsideration request is an extraordinary one that the Court should deny.

### A.   The government misstates the test for motions for reconsideration.

The government claims that reconsideration is appropriate when "an order overlooks or misapprehends facts or precedent." Dkt. 63 at 4. The government misreads the Local Rules. As the government concedes, under the Local Rules, motions for reconsideration "should be brought only if a court committed a 'manifest error in [its] prior ruling.'" Dkt. 63 at 4 (citing W.D. Wash. CR 12(b)(13)(A)).[1] The government then claims that "[m]anifest error includes 'overlook[ing] or misapprehend[ing]' some critical legal or factual issue." *Id.* (citing CR 12(b)(13)(B)).

The government's reliance on CR 12(b)(13)(B) to define "manifest error" this way is incorrect. That subsection requires any motion for reconsideration to "point out with specificity" various matters, including "the matters which the movant believes

---

[1] W.D. Wash. Loc. Crim. R. 12(b)(13)(A) also allows reconsideration motions if there is a "showing of new facts or legal authority which could not have been brought to its attention earlier with reasonable diligence." The government does not claim that this prong is applicable, nor could it; there are no new facts and all authority the government cites precedes this Court's Order.

were overlooked or misapprehended by the court[.]" *Id.* But that subsection does not equate manifest error with overlooking a legal or factual issue; it addresses the *contents* of the motion, not the *standard* for the motion. There is no authority in this district or any Ninth Circuit decisions equating the two concepts.

The flaw in the government's position can be seen another way: The same subsection requires the movant to identify "any new matters being brought to the court's attention for the first time[.]" *Id.* Any *new* matters being brought to the court's attention necessarily cannot establish manifest error. Such a contention is untenable, would open the doors to all litigants to withhold arguments from the court originally and then, if they lose, get another bite at the apple by filing motions for reconsideration, and confirms that this subsection does not define "manifest error."

A movant is free to argue that a court overlooked such critical matters that the decision constituted manifest error. But manifest error remains the test. The Court should deny relief on these grounds alone.[2]

"'[M]anifest error' is 'an error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Barton v. LeadPoint Inc.*, No. C21-5372 BHS, 2022 WL 293135, at *1 (W.D. Wash. Feb. 1, 2022) (quoting *Manifest error*, Black's Law Dictionary (11th ed. 2019)); *see also Cypress Ins. Co. v. SK Hynix Am. Inc.*, No. 2:17-CV-00467-RAJ, 2019 WL 1261950, at *1 (W.D. Wash. Mar. 19, 2019) (quoting 9th ed. 2009). Manifest error is a

---

[2] In its earlier briefing the government stated "[i]f this Court suppresses those videos as Holcomb asks, the government will likely have to elect between seeking authority to appeal that ruling, see 18 U.S.C. § 3731, or dismissing the indictment." Dkt. 41 at 8. The Court granted Mr. Holcomb's motion to suppress orally on May 11, 2022, and issued a written order on May 16, 2022. Dkt. 57, 58. After the Court granted Mr. Holcomb's motion to suppress, the government filed a motion for reconsideration on June 10, 2022. Dkt. 63. Under 18 U.S.C. § 3731, an interlocutory appeal under such circumstances shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted. The government has represented to the defense that they have not yet requested permission from the Solicitor General's office to file an interlocutory appeal considering having filed the motion for reconsideration. They have stated that a decision on whether to seek an interlocutory appeal will be made after the resolution of that motion.

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 2

FEDERAL PUBLIC DEFENDER
1601 Fifth Avenue, Suite 700
Seattle, Washington 98101
(206) 553-1100

high bar that the government simply cannot meet. This Court's Fourth Amendment analysis in no way shows "a complete disregard of the controlling law or the credible evidence in the record."

**B.      Reconsideration is to be used "sparingly," and not for arguments a party chose not to present originally.**

As this Court has stated, "[r]econsideration is 'an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Money Mailer, LLC v. Brewer*, No. C15-1215RSL, 2016 WL 11479219, at *1 (W.D. Wash. Nov. 15, 2016) (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). As the Honorable Benjamin H. Settle remarked, reconsideration motions "should not be used to ask a court to rethink what the court had already thought through—rightly or wrongly." *Immelt v. Sharp*, No. C20-5617 BHS, 2022 WL 594533, at *3 (W.D. Wash. Feb. 28, 2022) (citation omitted).

In a comment particularly apt for the government's reconsideration motion here, this Court previously observed that a party "cannot show manifest error based on the Court's failure to accept arguments or consider cases that were not presented in a timely manner." *Papadopoulos v. Fred Meyer Stores, Inc.*, No. C04-0102RSL, 2006 WL 1548825 at *1 (W.D. Wash. June 2, 2006); *see also Immelt*, 2022 WL 594533, at *3 ("[R]econsideration may not be based on evidence and legal arguments that could have been presented at the time of the challenged decision.").

Counsel has only been able to identify one case in which this Court considered authority that could have been presented earlier, where the moving party attributed their prior omission to having "misunderstood Defendants' argument[.]" *Kreidler v. Pixler*, No. C06-0697RSL, 2009 WL 10676498, at *1 (W.D. Wash. July 17, 2009). The

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 3

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

government does not and cannot suggest that its failure to make its "clearly controlling" argument earlier was a result of misunderstanding the issue of good faith.[3]

## II. THIS COURT APPLIED THE CORRECT LEGAL STANDARD IN DETERMINING THAT THE *LEON* GOOD FAITH EXCEPTION WAS UNAVAILABLE; AT A MINIMUM, THE COURT DID NOT COMMIT MANIFEST ERROR.

### A. The government grossly mischaracterizes this Court's ruling.

The government contends that this Court concluded that "suppression was automatic" when the warrant is overbroad. Dkt. 63 at 16; *See also id.* at 17. ("[T]he Court erred by treating suppression as an automatic consequence flowing from the Court's conclusion that the dominion-and-control provision of the Riquelme warrant was facially deficient."); *id.* (suggesting that this Court concluded that if "a warrant was too general [that] does[] result in automatic suppression").

The government's contention is wrong. The Court made no "automatic" move from a conclusion of the warrant's deficiency to the need for suppression. Instead, the Court first found the warrant deficient, both because it lacked particularity and because it was overbroad. *See* Dkt. 58 at 9-12. Then, the Order specifically acknowledged the holding of *United States v. Elmore*, 917 F.3d 1068, 1076 (9th Cir. 2019), that exclusion is an "entirely separate issue" as to whether the Fourth Amendment had been violated. Dkt. 58 at 12. Consistent with that holding, the Court did not then "automatically" order suppression.

---

[3] In its Response to the Motion to Suppress (Dkt. 41), the government asserted that Mr. Holcomb's failure to address good faith in the motion was a "tactic[]" that this Court should not "permit." *Id.* at n.8 (suggesting that this was comparable to where a court does not address arguments raised for the first time in a reply brief). But "[t]he government bears the burden of showing that the good-faith exception applies." *United States v. Artis*, 919 F.3d 1123, 1134 (9th Cir. 2019). It is not a moving party's obligation to negate an exception before the opposing party has even raised it. In fact, the government's failure to raise good faith in an answering brief constitutes a forfeiture of the issue, even where the defendant did not raise the issue in the opening brief. *United States v. Campbell*, 26 F.4th 860, 875 (11th Cir. 2022); *see also* Principal Brief of Appellant, *United States v. Campbell*, 2016 WL 4010132 (11th Cir. July 22, 2016) (showing that defendant did not address good faith in its opening brief).

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 4

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

Instead, this Court turned to the question the Supreme Court has directed courts to ask: whether "*Leon's* good-faith exception precludes suppression." *Id.* at 12-14 (Part II.F). The Court then held that the requirement of the exception (that the officers acted in good faith) was not met. *Id.* at 14. Only *after* addressing this "entirely separate issue" of whether suppression is proper under *Leon* did the Court order suppression. *Id.* at 12. The government disagrees with the Court's analysis, but that does not change the fact that this Court conducted the required analysis.

It is true that the Court rejected the government's contention that, even if the *Leon* good faith test is not applicable under the facts of this case, a court should take one more step and conduct a case-by-case balancing of deterrence and the costs of suppression. *Id.* at 14-16. As to the determination of whether there was good faith, the government can disagree with this Court's analysis, but that does not mean the Court failed to conduct an analysis and instead proceeded automatically from "warrant deficiency" to an order of suppression.

The Court's conclusion on the government's "weighing" contention came after the Court conducted the analysis pursuant to *Leon*, namely *whether* suppression was appropriate, once the warrant was held deficient.

In short, the government's repeated claims—including the claim that this Court "short-circuited" its analysis in favor of suppression or that this Court found that the warrant's deficiencies "automatic[ally]" called for suppression—are belied by Part II.F of the Order. *Id.* at 12-14.

**B.    This Court applied the correct legal standard; at a minimum, there was no manifest error.**

This Court's discussion of the *Leon* issue first cited to the standard for the good faith exception set forth in *Leon*, namely whether an officer acts "in objectively reasonable reliance" on the warrant. *Id.* at 13; *see Leon,* 468 U.S. at 922. It noted the

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 5

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    "four situations that *per se* fail to satisfy the good faith exception." *Id.* The Court held

2    three of those to be inapplicable, with the only one potentially applicable being whether

3    "the warrant is 'so facially deficient—i.e., in failing to particularize the place to be

4    searched or the things to be seized—that the executing officers cannot reasonably

5    presume it to be valid.'" *Id.* (quoting *Leon*, 468 U.S. at 923). This Court then reviewed

6    several Ninth Circuit cases involving the proper scope of warrants. It concluded that the

7    standard for the fourth situation in which the good faith exception would not apply was

8    met: "The Court therefore concludes that the dominion and control clause of the

9    warrant was so facially deficient that no executing officer could reasonably presume it

10   to be valid." Dkt. 58 at 14.

11       A recent District of Nevada case is illustrative of a facially-deficient warrant

12   precluding the good faith exception. In *United States. v. Lofstead*, the court granted

13   suppression "because the warrant was fatally overbroad and lacked particularity." No.

14   3:20-CR-00053-MMD-WGC, 2021 WL 5501101, at *1 (D. Nev. Nov. 22, 2021). The

15   court held the good-faith exception did not apply to a warrant that "far exceeded the

16   government's probable cause" because executing officers failed "to recognize that the

17   Warrant authorize[d] a general search of [the defendant's] phone." *Id.* at *9. The

18   warrant at issue contained "no search protocol, no temporal limitation, and no

19   discernable limits on content." *Id.* Because of this lack of particularity, the court

20   determined that "an executing officer would not be able to distinguish material that is

21   subject to search from that which is not," and concluded that "*an executing officer*

22   *behaving in good faith should know that such a search is objectively unreasonable* and

23   would likely violate the defendant's Fourth Amendment rights." *Id.* (emphasis added);

24   *see also United States. v. Atencio*, No. 1:21-CR-0058-DCN, 2022 WL 1288734, at *20-

25   21 (D. Idaho Apr. 29, 2022) (holding the good-faith exception did not apply where "the

26   same affidavit [was used] interchangeably to obtain search warrants for eight different

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 6

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

locations," the relevant "affidavit made no attempt to suggest evidence of" the crime would be found at the searched residence, and no evidence showed law enforcement officers who executed the warrant "relied upon [the relevant] affidavit" or "kn[e]w the particulars" of the alleged incident that led to the search).

The government, in arguing good faith when opposing the motion to suppress, offered the Court the exact same test that the Court ultimately applied: "whether a reasonably well-trained officer would have known that the search was illegal[.]" Dkt. 41 at 27 (quoting *Leon*, 468 U.S. at 900). The government provided the same test in its motion for reconsideration: "The central question is 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'" (Dkt. 63 at 7) (citation omitted). This Court answered the very question the government posed. That it did so in a way other than the government wished does not mean the Court applied the wrong legal standard or committed manifest error in applying that standard. The mere fact that a party disagrees with a court's conclusion when applying the law to the facts does not equate to manifest error lest every ruling be subject to a motion for reconsideration.

The government's discussion of good faith in its opposition was approximately one and one-half pages, Dkt. 41 at 27-28, a discussion that lacked the level of substance contained in the government's motion for reconsideration. The government now discusses at length cases in which the courts have described the *Leon* test in slightly differing language. *See* Dkt. 63 at 5, 7, 9, 16-17 (stating that suppression is warranted only for conduct that is "deliberate, reckless, or grossly negligent disregard for the Fourth Amendment" (citing *Davis v. United States,* 564 U.S. 229 (2011); and *Herring v. United States,* 555 U.S. 135 (2009)).[4]

---

[4] The government cited to both *Davis* and *Herring* in its original opposition. Dkt. 41 at 29.

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 7

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

From this, the government suggests that this Court found only negligence, not something higher. *See id.* at 18 (stating that "the Court should have assessed whether the police's purported failure to question the warrant resulted from negligence or something more" and then citing the same requirement).

The government's discussion of good faith in its response to the suppression motion, Dkt. 41 at 27-28, contains none of this language and cites to no case other than *Leon* (except for two cases not cited for any aspect of the *Leon* good faith exception). In short, its reconsideration motion has done exactly what this Court has said is not the proper basis for a reconsideration motion, namely present arguments and cases "that were not presented in a timely manner." *Papadopoulos*, 2006 WL 1548825 at *1.[5] This Court should reject the government's attempt for reconsideration that relies on a line of cases it chose not to present originally.

But even if this Court considers these new arguments, none of them establish error, let alone manifest error. Nothing in the Court's Order suggested that the Court's rejection of the good faith exception was based on anything other than what the Supreme Court and Ninth Circuit have required. Thus, the government's contention of error is without any support in the record, let alone its claim of manifest error as required in a motion for reconsideration.

### C. Suppression is required because the *Leon* good faith exception is unavailable; at a minimum, the Court's conclusion in that regard was not manifest error.

The Court's Order Requesting Response identified the following question Mr. Holcomb should answer: "(1) whether the Court applied the correct legal standard in determining that the good-faith exception set forth in *United States v. Leon*, 468 U.S.

---

[5] The government's opposition did cite a passage referring to "systemic error or reckless disregard" (which omits the terms "deliberate" and "grossly negligent" that appear in the passage referenced above). Dkt. 41 at 19. That was in a completely different context, namely a challenge to how the warrant was executed, whereas the issue in the government's reconsideration motion is whether the officers can be said to have relied on the warrant in good faith. *See id.*

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 8

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

897 (1984), was unavailable[.]" Dkt. 65 at 1. This question clearly encompasses whether the Court erred in determining how the good faith question is resolved, which was addressed in the previous section.

But Mr. Holcomb is unsure whether the Court intended him also to address the government's contention that, even if the good faith question is resolved in his favor, this Court must also conduct a case-by-case balancing of deterrence and the costs of suppression. Mr. Holcomb will now address that question; if this matter was not within the scope of the Court's first question, the Court can simply ignore the following discussion and turn directly to Part III.

The Court's order granting suppression directly considered and rejected the government's assertion that, even after finding the good faith exception inapplicable under *Leon*, this Court must conduct a separate balancing of costs and benefits. As this Court stated, "the balancing of deterrence against the social cost of suppression is already incorporated into *Leon*'s good-faith exception." Dkt. 58 at 15 (citing *United States v. Caesar*, 2 F.4th 160, 169 (3d Cir. 2021).

The cases that the government claims "foreclose[] suppression here" do no such thing. *See* Dkt. 63 at 19. Not one of them involved reliance on a warrant that police had obtained but was subsequently determined to be invalid. In *Davis v. United States*, the Court rejected suppression where the *warrantless* search was "in strict compliance with then-binding Circuit law and was not culpable in any way." 564 U.S. at 239–40. In *Utah v. Strieff*, there had been an unlawful and *warrantless investigatory stop*. 579 U.S. 232, 237 (2016). That led to discovery of a valid outstanding warrant and a resulting search incident to arrest. The fruits of that search were deemed too attenuated from the warrantless stop to justify suppression. In another case cited by the government, the Court held that violation of the *knock-and-announce rule* does not call for suppression. *Hudson v. Michigan*, 547 U.S. 586, 604 (2006). Finally, in *Herring*, the police relied on

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 9

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

a neighboring county's police database of arrest warrants but discovered later that the *warrant had been recalled*. 555 U.S. at 137-38. Someone from either the court staff or that other county's police had failed to ensure the database was updated. *Herring* held that this error did not call for suppression. *Id.* at 147.

In short, none of these cases hold, or even suggest, that a court must conduct a separate balancing after finding that the good faith exception is not available under *Leon*'s analysis for a search pursuant to a warrant later deemed invalid. These cases do show that, in some situations not governed by the *Leon* good faith exception, the Court will engage in the weighing the government discusses. But they have no bearing on this case.

The government also notes that *Caesar* spoke of how the good faith exception had been "refined" and "expanded." 2 F.4th at 169. However, as discussed above, the cases *Caesar* looked to (*Herring* and *Davis*) do not involve the *Leon* good faith exception. And immediately subsequent to the discussion the government refers to, *Caesar* stated, "Thus," and then enunciated a version of the *Leon* good faith exception that is the same as this Court applied. *Id.* at 170 ("[t]he test for whether the good faith exception applies is 'whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization.'") (quoting a Third Circuit case quoting *Leon*).

In short, the *Caesar* court did not see the *Leon* rule as having been altered at all. Nothing about *Caesar*'s discussion of how the exclusionary rule has been limited undercuts the holding in *Caesar* to which this Court looked, namely that the weighing the Supreme Court has called for is effectuated by (or incorporated into) the *Leon* test. [6]

---

[6] Thus, *Caesar*'s assertion  that "these more recent pronouncements in *Herring* and *Davis* have expanded the reach of the good faith exception and further narrowed the scope of the exclusionary rule" may be true about the scope of the exclusionary rule overall. 2 F.4th at 169. But it is inaccurate about their "expanding the reach of the good faith exception," if the *Caesar* court meant "good faith exception in the context *Leon* addressed, namely warrants later determined to be invalid." The fact that *Caesar*

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

1    The government has therefore not demonstrated that this Court—in declining to

2    conduct that balancing as an analysis separate from and in addition to the *Leon*

3    analysis—committed error, let alone manifest error.

4    **III.   THE *LEON* GOOD FAITH EXCEPTION MAY APPLY WHERE THE
       CASE LAW DOES NOT CLEARLY ESTABLISH THAT THE
5       WARRANT VIOLATED THE FOURTH AMENDMENT.**

6            Before addressing the Court's question, Mr. Holcomb will first note that the

7    government's contention—that the good faith exception applies only when controlling

8    case law clearly establishes that the warrant was invalid—was never even hinted at in

9    its opposition to the motion to suppress, although there was nothing preventing it from

10   making such an argument. The government again tries to do just what this Court has

11   said it "cannot" do, namely "show manifest error based on the Court's failure to accept

12   arguments or consider cases that were not presented in a timely manner."

13   *Papadopoulos*, 2006 WL 1548825 at *1. The Court should not permit it.

14       **A.  How *Leon* applies in a criminal case differs from how it applies in a civil
           rights action.**
15

16           The government has tried to distort the relationship between qualified immunity

17   and the good faith exception. It states that the "same standard" applies to both, and

18   argues that therefore the clearly established rule of qualified immunity applies to the

19   good faith exception:

20           The Supreme Court held in *Messerschmidt* that the "same standard of
         objective reasonableness" applies to the good-faith doctrine under *Leon*
21       and qualified immunity for an officer who obtained or relied on an
         allegedly invalid warrant. 565 U.S. at 546 n.1. In the qualified-immunity
22       context, establishing that an officer's reliance on a warrant was objectively
         unreasonable requires a court to identify controlling law that clearly
23       establishes that the warrant violated the Fourth Amendment. In other
         words, the good-faith doctrine applies if the law either authorizes the
24

25

26   subsequently endorsed the very test enunciated in *Leon* suggests it did not intend the meaning the
     government attributes to it.

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 11

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

challenged warrant or is silent on the facts underlying a suppression motion.

Dkt. 63 at 8. *Messerchmidt* was quoting *Malley v. Briggs*, 475 U.S. 335, 344 (1986). Here is the relevant passage from *Malley*:

> [W]e hold that the same standard of objective reasonableness that we applied in the context of a suppression hearing in *Leon, supra,* defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest. Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable, *Leon, supra,* at 923, 104 S. Ct., at 3421, will the shield of immunity be lost.

475 U.S. at 344–45 (footnote omitted).

In other words, it is not that the law of good faith exception looks to the law of qualified immunity. Rather, when the good faith exception is not applicable, then there is no qualified immunity. If the warrant is so deficient that no reasonable officer could believe it valid, "the shield of immunity [is] lost." *Id.* In *Smith v. Munday*, the court read *Malley* the same way—the conclusion underlying the good faith exception controls the qualified immunity question, not vice versa: "Qualified immunity does not apply 'where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable.'" 848 F.3d 248, 256 (4th Cir. 2017) (quoting *Malley*, 475 U.S. at 344–45).

In *Ellison v. Balinski*, the court also read *Malley* the same way: "While police generally are entitled to rely on a judicially secured warrant for immunity from liability for unconstitutional searches, qualified immunity is not appropriate where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable." 625 F.3d 953, 959 (6th Cir. 2010) (quoting *Malley*, 475 U.S. at 344–45).

Here, the Court correctly found "that the dominion and control clause of the warrant was so facially deficient that no executing officer could reasonably presume it

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 12

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

to be valid." Dkt. 58 at 14. That resolves the good faith issue (and per *Malley*, it also resolves the qualified immunity issue, though this Court does not have a qualified immunity issue before it.)

In numerous criminal cases that followed *Malley*, where the breadth and scope of a warrant was successfully challenged, the Court did not look to qualified immunity as a basis to deny relief. *See, e.g.*, *United v. Spilotro*, 800 F.2d 959, 961-62 (9th Cir. 1986); *United States v. Dozier*, 844 F.2d 701, 704 (9th Cir. 1988); *United v. Stubbs*, 873 F.2d 210, 212 (9th Cir. 1989); *United States v. Kow*, 58 F.3d, 423, 426 (9th Cir. 1995); *United States v. SDI Future Health, Inc*., 568 F.3d 684, 705-08 (9th Cir. 2009); *Atencio*, * 20-22 (same); *Lofstead*, *9-11(same). These cases stand for the proposition that when the warrant "*per se*" fails to satisfy *Leon* because the warrant fails for particularity, suppression is granted without additional inquiry. Dkt. 58 at 13. In short, the Court is not compelled to grant a *Leon* good-faith exception when the warrant *per se* fails to satisfy the *Leon* test. The Court suppresses the evidence meaning the evidence is inadmissible as evidence in the government's case-in-chief in a criminal trial.

**B.  Assuming without conceding the premise of the Court's question, the Court may grant a *Leon* good faith exception in certain circumstances where the law is not clearly established.**

The Court asked "whether the Court is compelled to grant a *Leon* good-faith exception where there is no Supreme Court or Ninth Circuit case law that clearly establishes that the warrant violated the Fourth Amendment[.]" Dkt. 65 at 1-2. In its third question as well, the Court referred to "Supreme Court or Ninth Circuit case law." *Id.* at 2. Even if the "clearly establishes" test did apply in this case, it is not necessarily limited to Supreme Court or Ninth Circuit case law. *Id.* The government provides little detail regarding what it claims it means for case law to be "clearly establishe[d]." It apparently hopes to save such argument for its reply, when Mr. Holcomb has no

opportunity to respond, and to the extent fairness requires it, he will ask to file a sur-reply.

"'[T]he salient question . . . is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741); *see also Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017) (quoting *Hope*).

*Ioane v. Hodges,* 939 F.3d 945 (9th Cir. 2018) is instructive. *Ioane* involved a *Bivens* claim, based on a female agent, during execution of a search warrant, insisting on being present when the wife of the target needed to use the bathroom and requiring her to raise her dress while she relieved herself. 939 F.3d at 950. The court found that the agent was not entitled to qualified immunity. Notably, it first observed that "[w]hile the Ninth Circuit never has articulated a standard for when an officer's intentional viewing of an individual's naked body is constitutionally permissible under the Fourth Amendment, '[t]he touchstone of the Fourth Amendment is reasonableness.'" *Id.* at 953.

Despite this lack of a clear standard, the court found the law to be clearly established based on the interaction of four cases. First, "it was clearly established that an individual's naked body is the most basic subject of privacy." *Id.* at 956 (citing *York v. Story*, 324 F.2d 450, 455 (9th Cir. 1963)). Second, "it was clearly established that casual, restricted, and obscured viewing of a prison inmate's naked body is constitutionally permitted if it is justified by legitimate government interests such as prison security needs." *Id.* (citing *Grummett v. Rushen*, 779 F.2d 491, 494–95 (9th Cir. 1985)). Third, "it was clearly established that a male parole officer's intentional viewing of a female parolee providing a urine sample, over the parolee's objection, is unconstitutional." *Id.* (citing *Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir.

1992)). Lastly, it was clearly established "that an individual's Fourth Amendment right against unreasonable searches is not abrogated by virtue of her presence at the execution of a search warrant." *Id.* at 956-57 (citing *Ybarra v. Illinois*, 444 U.S. 85, 91-93 (1979)).

From the amalgamation of these cases, the Ninth Circuit found the law to be clearly established. Several things are notable about the court's analysis. First, it was the principles of these cases "taken together" that was held to clearly establish the law. 939 F.3d at 957. Second, the court's conclusion required testing the officer's situation against the high-level abstraction of "legitimate government interests[.]" *Id.* And third, it required extrapolating from when a pat-down is prohibited. *Id.* Fourth, the analysis was fact intensive.

In addition, the court held that the distinction between the cases it relied on (which involved searches by members of the opposite sex) and the facts in *Ioane* (with a female viewing a female), did not affect their relevance for demonstrating what principles were clearly established. *Id.* at 954 n.5; *see also Dollard v. Whisenand*, 946 F.3d 342 (7th Cir. 2019) (clearly established arrest warrant was deficient with respect to "intent to conspire" element of conspiracy where no evidence of knowledge of conspiracy was described; but granting qualified immunity for arrest based on warrant that described some but inadequate awareness of conspiracy); *Sims v. Labowitz*, 885 F.3d 254, 264 (4th Cir. 2018) (no qualified immunity for constitutional violation in photographing suspect's erect penis despite obtaining a warrant for the procedure; "[h]ere, the obvious, unconstitutional invasion of Sims' right of privacy that was required to carry out the warrant rendered reliance on that warrant objectively unreasonable, thereby eliminating the protection that a search warrant typically would have afforded an executing officer."); *Smith v. Munday*, 848 F.3d 248, 252 (4th Cir. 2017) (holding that it was unreasonable to obtain a warrant on basis of plaintiff's

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 15

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

criminal history, common race, common gender, and unfortunately common name);
*Graham v. Gagnon*, 831 F.3d 176, 179 (4th Cir. 2016) (rejecting contention that
obtaining arrest warrant from neutral magistrate, on a second request after an initial
denial, insulated defendants from liability for wrongful arrest for obstruction of justice;
given statute and facts that would have been known to reasonable official, "it would
have been clear to reasonable officers" that probable cause was lacking); *Ellison v.
Balinski*, 625 F.3d 953, 959 (6th Cir. 2010) ("While police generally are entitled to rely
on a judicially secured warrant for immunity from liability for unconstitutional
searches, qualified immunity is not appropriate 'where the warrant application is so
lacking in indicia of probable cause as to render official belief in its existence
unreasonable.'"); *Mills v. City of Barbourville*, 389 F.3d 568, 577, (6th Cir. 2004)
(qualified immunity not appropriate even though warrant secured, where officers
presented no information in affidavit that place to be searched was connected to Mills
or to drug purchase).

As a result, "officials can still be on notice that their conduct violates established
law even in novel factual circumstances." *Hope*, 536 U.S. at 741. The Court has
"expressly rejected a requirement that previous cases be 'fundamentally similar.'" *Id.*
(quoting *United States v. Lanier*, 520 U.S. 259, 270 (1997)). "The same is true of cases
with 'materially similar' facts." *Hope*, 536 U.S. at 739. *See also Sandoval v. Cnty. of
San Diego,* 985 F.3d 657, 680 (9th Cir.), *cert. denied sub nom. San Diego Cnty. v.
Sandoval*, 142 S. Ct. 711 (2021) (quoting all three of these points from *Hope*).

As the Ninth Circuit has put it, "'[Cl]osely analogous preexisting case law is not
required to show that a right was clearly established.'" *Ioane*, 939 F.3d at 957 (quoting
*White v. Lee*, 227 F.3d 1214, 1238 (9th Cir. 2000)) (alteration in *Ioane*). In fact, "a
general constitutional rule already identified in the decisional law may apply with
obvious clarity to the specific conduct in question, even though 'the very action in

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 16

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

question has [not] previously been held unlawful.'" *Hope*, 536 U.S. at 741 (quoting *Lanier*, 520 U.S. at 271 (in turn quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987))).

The principle that the law can be clearly established, even in novel factual situations is one the Ninth Circuit "is particularly mindful of . . . in the Fourth Amendment context, where the constitutional standard—reasonableness—is inevitably a fact-intensive inquiry." *Bonivert v. City of Clarkston*, 883 F.3d 865, 872 (9th Cir. 2018). "After all, '[i]f qualified immunity provided a shield in all novel factual circumstances, officials would rarely, if ever, be held accountable for their unreasonable violations of the Fourth Amendment." *Id.* at 872-73 (quoting *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (alteration in *Bonivert*).

**C.  Even if the "clearly establishes" test were applicable, that standard is not the insurmountable standard that the government implies.**

**1.   Under the "clearly establishes" test, the officers were clearly on notice that the "dominion and control" provision did not authorize the search of the computer in its entirety.**

A significant body of law from the Supreme Court and Ninth Circuit supports this Court's particularity analysis of the dominion and control clause. *See* Dkt. 58 at 10. These cases demonstrate that it was clearly established that a warrant's search provision lacks particularity when it fails to specify the crimes for which the search is being undertaken or contains unduly broad, ambiguous, or catch-all categories. These cases also demonstrate that once a court determines that the warrant is overbroad for such reasons, the good faith exception cannot apply.

Since its ratification in 1791:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 17

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

or affirmation, and *particularly describing the place to be searched, and the persons or things to be seized*.

U.S. Const. amend. IV. (emphasis added).

The "particularity" requirement prevents a "general, exploratory rummaging in a person's belongings," *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971), and "the seizure of one thing under a warrant describing another." *Marron v. United States*, 275 U.S. 192, 196 (1927). The "Fourth Amendment's commands [including the commands regarding particularity], like all constitutional requirements, are practical and not abstract," meaning they "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *United States v. Ventresca*, 380 U.S. 102, 107 (1965); *United States v. Cardwell*, 680 F.2d 75, 77 (9th Cir. 1982) (using the common sense and realistic as to particularity); *United States v. Gomez-Soto*, 723 F.2d 649, 654-55 (9th Cir. 1984) (same).

The particularity requirement "assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search," *Groh v. Ramirez*, 540 U.S. 551, 561 (2004) (citation omitted), and "greatly reduces the perception of unlawful or intrusive police conduct." *Illinois v. Gates*, 462 U.S. 213, 236, (1983). To serve these ends, the particularity requirement leaves nothing "to the discretion of the officer executing the warrant." *Marron*, 275 U.S. at 196. Without a sufficiently particular warrant, a search is considered warrantless. *Groh*, 540 U.S. at 558.

In *United States v. Spilotro*, the Court invalidated two warrants identified as the "Gold Rush" and the "Blasko" warrants because "they authorize[d] wholesale seizures of entire categories of items not generally evidence of criminal activity, and provide[d] no guidelines to distinguish items used lawfully from those the government had probable cause to seize." 800 F.2d 959, 964 (9th Cir. 1986). In *Spilotro*, the Court did

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 18

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

not grant a *Leon* exception because no reasonable officer would rely on the two

warrants. *Id.* at 968.

In *United States v. Dozier*, the warrant authorized the search of the defendant's

residence for:

> written records, financial statements, address books, United States
> Currency, telephone books and bills; controlled substances, including
> marijuana and residue of marijuana; equipment used in the cultivation of
> marijuana, including saws, hoes, shears, and black, plastic pipe; and
> records, documents, papers, *and indicia of residency/ownership* of
> premises.

844 F.2d 701, 704 (9th Cir. 1988) (emphasis added). The government agreed that the

provision was "overbroad" since it allowed officers the ability to seize all "written

records, financial statements, address books . . . telephone books and bills" but asked

that the court grant a good faith exception. *Id.* at 707-08. The court rejected the request

because, even though the language was approved by a prosecutor, the warrant failed to

limit the "documents to be seized to specified categories and time periods." *Id.*

In *United States v. Stubbs*, the court invalidated a warrant because it did not

provide probable cause "to seize all documents in Stubbs' office, the warrant was

defective in that it did not provide objective standards by which an executing officer

could determine what could be seized." 873 F.2d 210, 211 (9th Cir. 1989). The Court

continued "[i]t contained no reference to any criminal activity. The [search provision]

merely described broad classes of documents without specific description of the items

to be seized." *Id.* at 212. The Court refused to grant a good faith exception. *Id.*

In *Kow*, the Court invalidated a warrant that contained fourteen search

provisions that "authorized the seizure of virtually every document and computer file"

and failed to "provide[] any guidance to the officers executing the warrant, the warrant

apparently sought to describe every document on the premises and direct that

everything be seized." 58 F.3d at 426. As to particularity, *Kow* held that the

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 19

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

"government could have made the warrant more particular" by "obviously" specifying its search provisions towards "suspected criminal conduct." *Id*. at 427. *Kow* continued "[t]he government did not limit the scope of the seizure to a time frame within which the suspected criminal activity took place, even though [the] affidavit indicates that the alleged criminal activity began relatively late in HK Video's existence." *Id.* As to breadth, *Kow* held that the officer's "affidavit" failed to "establish the probable cause required to justify the widespread seizure of documents authorized by the warrant in this case." *Id.* at 428. The Court refused to grant a good-faith exception. *Id.*

The above cases have led to the Court establishing a clear three-factor test to determine whether a warrant is sufficiently precise, a test also applied in cases involving digital evidence:

> (1) whether probable cause exists to seize all items of a particular type described in the warrant, (2) whether the warrant sets out objective standards by which executing officers can differentiate items subject to seizure from those which are not, and (3) whether the government was able to describe the items more particularly in light of the information available to it at the time the warrant was issued.

*Stubbs*, 873 F.2d at 211; *see also United States v. Hill*, 459 F.3d 966, 973 (9th Cir. 2006) (describing similar factors). In cases involving computers, the level of specificity required depends on what is reasonable given "the circumstances of the case and the type of items involved." *Hill*, 459 F.3d at 973 (quoting *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986)); *see also id.* at 974 ("As always under the Fourth Amendment, the standard is reasonableness.").

Where computers are concerned, the Ninth Circuit has upheld broad warrants to seize all storage media for later examination if there was no way of knowing where the digital materials were stored. *Compare United States v. Hay*, 231 F.3d 630, 636–37 (9th Cir. 2000) (upholding a warrant that "authorized the government to search and seize Hay's entire computer" because the government "had no way of knowing where the

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 20

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

images were stored"); *and United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997)

(allowing seizure of the defendant's "entire computer system"); *with Kow*, 58 F.3d at

427 (invalidating a warrant that "authorized the seizure of virtually every document and

computer file" at the defendant's business).

As the court explained in these cases, such warrants must be supported by

affidavits "giving a reasonable explanation . . . as to why a wholesale seizure is

necessary," enabling the magistrate to "intelligently . . . exercise the court's oversight

function." *Hill*, 459 F.3d at 976; see also *Lacy*, 119 F.3d at 746 (distinguishing *Kow*

because "the affidavit [in *Lacy*] established probable cause to believe Lacy's entire

computer system was likely to evidence of criminal activity" (internal quotation marks

omitted)). The warrants contained "objective limits" which allowed "seizure only of

documents linked to" criminal activity. *Id.*

In *United States v. Comprehensive Drug Testing, Inc.*, the Court went further

and updated a workable framework for authorizing computer searches "to maintain the

privacy of materials that are intermingled with seizable materials, and to avoid turning a

limited search for particular information into a general search . . . ." 621 F.3d 1162,

1170 (9th Cir. 2010). The Court affirmed the lower court's warrant, which included the

following procedural safeguards:

> [T]he initial review and segregation of the data was not to be conducted by
> the investigating case agents but by 'law enforcement personnel trained in
> searching and seizing computer data ("computer personnel")' whose job it
> would be to determine whether the data could be segregated on-site. These
> computer personnel—not the case agents—were specifically authorized to
> examine all the data on location to determine how much had to be seized
> to ensure the integrity of the search. Moreover, if the computer personnel
> determined that the data did not 'fall within any of the items to be seized
> pursuant to this warrant or is not otherwise legally seized,' the government
> was to return those items 'within a reasonable period of time not to exceed
> 60 days from the date of the seizure unless further authorization [was]
> obtained from the Court.'

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 21

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

*Id.* at 1169-70. Though endorsed in the context of returning illegally seized property pursuant to Fed. R. Crim. P. 41(g) rather than suppression of evidence, the principle remains the same: under Ninth Circuit case law, it is clearly established that the seizure of all digital materials without sufficient particularity is not permitted, unless significant procedural safeguards are included in the warrant *and followed by law enforcement*.

Here, following these clearly established principles, the Court applied *Kow* and invalidated the dominion and control provision, the only provision relied on by the government, because "the dominion and control clause of the Riquelme warrant lacked time, relationship to crime, and file category limitations." Dkt. 58 at 14. "Without these limitations, law enforcement was left guessing what computer files were appropriate to search." *Id.* The Court reached this conclusion by testing the search provision in a "commonsense and realistic fashion," *Gomez-Soto*, 723 F.2d at 653, a test that rejected the government's justification that the search of the entire computer was justified to determine dominion and control. Dkt. 58 at 11, fn. 7. In so doing, the Court denied Mr. Holcomb's request for an evidentiary hearing to further develop the record surrounding the circumstances of the search. Dkt. 35 at 1; *see* Dkt. 41 at 29 ("Holcomb requests an evidentiary hearing" but the government believes an evidentiary hearing is unnecessary); *see also* Dkt. 49 at 11, 24, 26. The purpose of the hearing was for Mr. Holcomb to develop facts and confront witnesses to demonstrate that the warrant was executed in direct violation of the Fourth Amendment, was executed in bad-faith, and that Mr. Holcomb suffered prejudice as a result. *See United States v. Ramirez*, 976 F.3d 946 (9th Cir. 2020).

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 22

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

**2. To the extent the Court intends to apply the "clearly establishes" test, Mr. Holcomb requests an evidentiary hearing to demonstrate that the computer search in this case clearly violated the Fourth Amendment, the search was conducted in bad faith, and that Mr. Holcomb suffered prejudice as a result of the search.**

As explained, the facts and law before the Court clearly establish that the "dominion and control" provision relied on by the government (not the state agents) violates the Fourth Amendment. However, to the extent the Court reconsider this issue, Mr. Holcomb requests an evidentiary hearing to develop additional facts to demonstrate that the search was conducted in bad faith and that Mr. Holcomb suffered prejudice.

The government represented to the Court that "there is no need for an evidentiary hearing." Dkt. 41 at 29. The government took this position despite Mr. Holcomb's request for one in his opening motion, Dkt. 35 at 1, a request renewed in his reply, after the government, for the first time, included the Riquelme warrant and took the position that the "dominion and control" provision allowed the search. Dkt. 49 at 11; 24; 26. The state prosecutor and officers never defended the warrant in this manner.

Despite this history, the government, again, attempts to interpret the "dominion and control" provision to allow the search of an entire computer because it "was likely to be helpful in proving the authenticity," "plain view," since timestamps can easily be "alter[ed]," Dkt. 63 at 6, fn. 1, and to allow the officer to conduct a "cursory" look of the computer in its entirety. Dkt. 63 at 14. In so doing, the government ignores the facts of the case and ignores the common sense and realistic test.

Thus, the government is again putting into issue the need for an evidentiary hearing because the "clearly established" test is a factually intensive inquiry.

First, at the hearing, Mr. Holcomb will establish that no officer relied on the "dominion and control" provision to search the computer, let alone the reasons set out in the motion for reconsideration; this is an artificially created factual premise. Dkt. 63

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 23

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

at 9-16. At the hearing, Mr. Holcomb will establish through witness testimony that this was not a cursory review or a plain-view review. *Id. Compare* Dkt. 35-1 at 75 ("While completing this *search of the computer . . .* Detective Duane Neufeld (SCSO) inadvertently located what appeared to be child porn videos that had been created on 11/21/2016.") *with* Dkt. 49-2 at 4 ("Detective *searches* the hard drive by using Forensic Explorer. However, he does not use the date/time search function to narrow his *search*. He *pulls up all videos and starts just scrolling through*.") To be clear, such an assessment of the officers' actual conduct in this case does not necessitate a journey "into the minds of [the] police officers," *Leon*, 468 U.S. at 922 n. 23, but rather involves simply reading the documents in the record containing the undisputed, relevant facts known to the officers prior to the search, listening to the witnesses' testimony, and making requested findings-of-fact by Mr. Holcomb.

Second, at the hearing Mr. Holcomb will establish through witness testimony that the affiant, Detective Adrian Kuschnereit, drafted both the Svaren Affidavit and Warrant (Dkt. 35-1 at 15-24) and the Riquelme Affidavit (Dkt. 35-1 at 47-55) and Warrant. (Dkt. 41-1 at 1-3.); Dkt. 35-1 at 75. He will establish through witness testimony that no superior officer or prosecutor signed off on the warrant nor was there any representation made to either Judge Svaren or Judge Riquelme that the "dominion and control" provision would be relied on to search the entire computer nor was there any representation made by them allowing such a search. Indeed, at the hearing it will be established that prior to the search another judge observed: "I realize in reading the affidavit of probable cause, that while every case is unique, this one has some unusual circumstances alleged even in the affidavit of consensual sex, nonconsensual, then consensual, then nonconsensual." Dkt. 35-2 at 7. It will be established that the deputy prosecuting attorney at that hearing represented: "And we have not yet filed charges because we need the opportunity to further investigate, execute and look at the results

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 24

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

of search warrants. I understand that there are videos and things of that nature to look at." *Id.* at 5. He will further establish through witness testimony and subpoenaed records that Detective Kuschnereit no longer works for *any* police department and develop a record as to the circumstances surrounding his employment and career in law enforcement coming to an end.

Third, Mr. Holcomb will establish through witness testimony that when Mr. Holcomb's lower drive was searched there was no longer a valid warrant that permitted the search. He will establish through testimony that forensic evidence, i.e., Forensic Explorer audit logs, were either not preserved or destroyed – all of which prohibited Mr. Holcomb from substantiating the dates and times that the state officers allege the contraband was extracted, reviewed, or moved and the user who performed such actions. Dkt. 35-3 at 15-16.

Fourth, at the evidentiary hearing, Mr. Holcomb will establish through witness testimony that state officers did in fact know that the forensic software in this case had a date/time search function on it, they regularly used it in other cases, and they used it in this case with respect to Mr. Holcomb's cell-phone because the warrant clearly commanded that the scope of the search be limited to a particular time-period.

Finally, depending on how witnesses answer particular questions posed to them, the defense may confront such witnesses with additional facts that it cannot professionally disclose at this time. *See e.g.* Washington's Rule of Professional Conduct 1.6 (Confidentiality of Information).

## IV.   CONCLUSION

The government is asking this Court to set a precedent effectively abolishing the exclusionary rule. The Court committed no error; the good faith exception was not applicable, and suppression was appropriate. At a minimum, the government has not demonstrated manifest error. In addition, most of its contentions are ones that could

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 25

**FEDERAL PUBLIC DEFENDER**
**1601 Fifth Avenue, Suite 700**
**Seattle, Washington 98101**
**(206) 553-1100**

have been, but were not, raised in its original opposition. The government's motion should be denied.

DATED this 1st day of August 2022.

Respectfully submitted,


s/ *Mohammad Ali Hamoudi*[7]
s/ *Gregory Geist*


Assistant Federal Public Defenders
Attorneys for John Holcomb

---

[7] Undersigned counsel extends gratitude to Jared Rothenberg, rising 2L at University of Washington for his research and contributions to this response.

RESPONSE TO GOVERNMENT'S
MOTION FOR RECONSIDERATION
(*United States v. Holcomb*, CR21-075-RSL) - 26